IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF PENOBSCOT,

ARGUED AT JUNE TERM, 1842.

## HENRY BLAKE *versus* JAMES IRISH.

When the verdict will necessarily charge one, or will discharge him from a fixed liability, he is incompetent to testify in the case; but where there is no fixed or certain liability, whether the plaintiff recovers or not, and his interest, if any, is contingent, a mere possibility that he may be charged, it goes to the credibility of the witness, and not to his competency.

In determining whether an instruction to the jury be, or be not, correct, it should be considered in connexion with the evidence in the case, and as applicable to it.

ASSUMPSIT on an account annexed to the writ.

In the report of the case, the parol testimony is all given at length, but the contracts in writing are merely referred to, and no copies of them were furnished to the Court, and none have come into the hands of the Reporter. Without them, the parol evidence would be of little use. Enough, however, perhaps may be found in the opinion of the Court to understand the points decided. There was also a motion to set aside the verdict as against the evidence.

The jury were instructed by SHEPLEY J. presiding at the trial, that the power given in writing by the defendant to Pollard was not sufficient to enable him to make the written con-

tract with the plaintiff; and that to enable the plaintiff to re-
cover, he must prove that the defendant knew that he was at
work in execution of it, and assented to, or made no objection
to his proceeding and continuing to work, and execute it.

The verdict was for the plaintiff, and was to be set aside, if
the instructions were erroneous.

*J. Appleton* and *Prentiss* argued for the defendant, and
cited, 2 Stark. Ev. 744 ; 8 Pick. 51 ; 14 Mass. R. 303 ; 3
Mason, 405 ; 9 Peters, 607 ; 3 Greenl. 429 ; 4 Mason, 296 ;
18 Maine R. 436.

*Blake*, for the plaintiff.

The opinion of the Court was drawn up by

SHEPLEY J. — The first objection to the verdict is, that Bar-
zillai Brown was an incompetent witness, being interested in
the event of the suit. When the verdict will necessarily
charge one, or will discharge him from a fixed liability, he is
interested in the event of the suit. In this case no fixed or
certain liability attaches to Brown, whether the plaintiff recov-
ers or not. His interest, if any, is contingent, a possibility
that he may be charged. In such case it goes to the credi-
bility and not to the competency.

The second objection is, that the instructions were erroneous
in stating, " that to enable the plaintiff to recover he must
prove, that the defendant knew, that he was at work in exe-
cution of it [the contract between the plaintiff and Pollard]
and assented to, or made no objection to his proceeding and
continuing to work and execute it." The argument is, that
the defendant might have known, that the plaintiff was at work
in the execution of that contract for Brown or some other per-
son and made no objection to it; and yet by the instructions
would be made liable. This exception should prevail, if the jury
could have so understood the instructions. But if they must,
from the testimony before them and from the proceedings
at the trial, have clearly understood the language to mean the
same, as if it had been, that to enable the plaintiff to recover
he must prove, that the defendant knew that he was at work

in execution of it for him, and assented to, or made no objection, it will amount only to a verbal criticism upon the language used in drawing up the report. The reported case and the testimony referred to in it show, that the plaintiff claimed to recover upon two grounds. First, that Pollard was authorized by the written agreement between him and the defendant, bearing date on the 15th July, 1835, to make the contract with him. Second, if he was not; that the defendant knew, that Pollard professed to be acting under that power, when he made the contract, and that the plaintiff was executing it under that belief, and yet made no objection, but assented to such execution. And the defence was, that Pollard had no authority from the defendant to make the contract, that he did not profess to make it as agent for the defendant, but for Brown or some one else; that the defendant did not know, that Pollard professed to be acting as his agent in making it, and that he did not know or approve of his executing it as if made for him. It cannot be necessary to state the testimony in detail to prove, that the jury must have understood the instructions as bringing their minds distinctly to the consideration of the testimony tending to show, that the plaintiff might recover on the second ground assumed by him, while he could not on the first. If any doubt can remain, it will be dispelled by presenting so much of the testimony as becomes necessary in considering the third objection; which is, that the defendant was but the agent of the owners and Pollard a sub-agent under him; and that if the defendant ratified the acts of Pollard in making the contract, he did not bind himself, but the owners for whom he was agent. The defendant, by the agreement of the 15th July, 1835, authorized Pollard, as his agent, to receive proposals for cutting, hauling and driving from one to ten millions feet of timber from the township during the next season. He engages to pay Pollard and makes no mention, that he is acting as agent for others, or that any other persons were interested.

Ira Fish testifies to a conversation with the defendant in the fall, and he thinks in September or October, 1835, and says,

"he inquired of me, what sort of an agent Joseph Pollard would make; and stated, that he had employed him to superintend the logging business on that township as an agent." "He requested me to use my influence with the settlers on No. 4 to go on and haul by the thousand, which I promised to do. I accordingly called on Henry Blake of No. 4 and several other settlers, among them Grant and Palmer, and advised them to go on and examine the timber on No. 5, and if they found a good chance, to cut and haul by the thousand." On the 26th of November following, Pollard, as agent, without stating for whom, made a written contract with the plaintiff, the same Henry Blake, to cut and haul logs from that township by the thousand. The contract says, the logs are "to be scaled on the bank, where they are hauled, by some person agreed by James Irish of Gorham, and his account shall be binding between the parties." What parties could have been intended, but the parties to the survey; and who are the parties to the survey but those, who agree upon the surveyor?

On such testimony, if uncontradicted, no mind can reasonably doubt, that the plaintiff believed, that he was making a contract with the defendant, not acting as an agent for others, but in his own right, through the agency of Pollard. Ira Fish further testifies, that in the first part of the winter in conversation between him and the defendant, the logging operations on No. 5 were spoken of, and that he received from the defendant no different impressions respecting them, who inquired of him, "how Mr. Blake was getting along in the logging business." The only testimony in direct conflict with this aspect of the case, is that of Pollard, who testifies, that in making the written contract with the plaintiff he acted as the agent of Brown; and that he had authority in writing from him to do so. That written authority is produced bearing date apparently Sept. 27, 1835. On inspection it appears, that the month and day of the month have been altered. Brown testifies, that it was not executed at the time, it purports to be dated. "That it was executed in the winter sometime after Blake had commenced hauling." "That he signed it at the suggestion of

Pollard," who " said, he had made a contract with Blake, and that witness might have it, if he chose. Witness said he would take it, and gave him the paper; but that Blake knew nothing of this arrangement to his knowledge." It appears to have been by this arrangement, as it is called, that Brown, by the agency of Pollard, received the lumber hauled by the plaintiff, and if the defendant be thereby a loser, it is, if Brown's testimony be credited, by the misconduct of his own agent, Pollard.

What evidence is there, that the defendant was during this time in fact acting as the agent of other persons, or that others were then interested?

Pollard in his deposition says, "In July, 1835, I commenced as agent of James Irish, and so continued through the then coming winter; and in the summer of 1836, I was appointed agent of the proprietors of said township. I knew no other agent in 1835. In 1836, Mr. Hersey was co-agent." Mr. Hersey's testimony does not contradict, but rather confirms Pollard in this particular. Brown says, " he settled the stumpage account with James Irish, who acted for Howe and Jones, James Read, and Tuckermans, of Boston, as he understood." But this is not stated to have been done, and it is not probable, that it was done, until the lumber had been received in the summer of 1836. There is therefore no satisfactory evidence, that the defendant did not act for himself only and design to do so, or that there were other owners before the summer of 1836. The fact, that others received payment for the agreed value of the lumber, which had been cut, is not inconsistent with a subsequent purchase by them with an agreement to receive the pay for the lumber, which had been cut the preceding winter.

It was a matter for the jury to consider, whether they would give credit to the testimony of either Pollard or Brown, or refuse it to both. It is not perceived, that they could be misled by the instructions; or that the Court is authorized to disturb their verdict.

*Judgment on the verdict.*